1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

ROSALINA CEBALLOS,

    Plaintiff,

    v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.

)
)
)
)
)
)
)
)
)
)
)

NO. CV 11-08632 AGR

MEMORANDUM OPINION AND ORDER

      Plaintiff Rosalina Ceballos filed this action on October 20, 2011.  Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge on November 21 and December 19, 2011.  (Dkt. Nos. 8, 9.)  On July 30, 2012, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues.  The court has taken the matter under submission without oral argument.

      Having reviewed the entire file, the court reverses the decision of the Commissioner and remands for further proceedings consistent with this opinion.

# I.

## **PROCEDURAL BACKGROUND**

On September 17, 2007, Ceballos filed an application for disability insurance benefits alleging an onset date of May 15, 2007.[1]  AR 17.  The application was denied initially and upon reconsideration.  AR 77-78.  Ceballos requested a hearing before an Administrative Law Judge ("ALJ").  AR 116.  On October 22, 2009, the ALJ conducted a hearing at which Ceballos and a vocational expert ("VE") testified.  AR 48-76.  On November 4, 2009, the ALJ issued a decision denying benefits.  AR 85-91.  On August 19, 2010, the Appeals Council granted Ceballos' request for review and remanded the case to the ALJ.  AR 96-99.  The Appeals Council directed the ALJ to adequately consider the opinion of Dr. Knight, a treating physician, explain the weight given to such opinion evidence, and request additional evidence from the treating source, if appropriate; consider whether Ceballos' obesity is a severe impairment and whether it has an impact on her ability to work; adequately evaluate Ceballos' credibility; and if warranted, obtain supplemental evidence from a VE.  AR 98.

On April 6, 2011, the same ALJ conducted a remand hearing at which Ceballos testified and additional medical records from Dr. Grogan, a consultative examining physician, were received into evidence and made a part of the record.  AR 30-47, 526-37.  On April 27, 2011, the ALJ issued a decision denying benefits.  AR 11-24.  On August 26, 2011, after receiving additional medical evidence and making it part of the record, the Appeals Council denied the request for review.[2]  AR 1-6.  This action followed.

---

[1]  Ceballos initially alleged a disability onset date of July 19, 2006. Administrative Record ("AR") 194.  At the hearing on October 22, 2009, she made a motion to amend the disability onset date to May 15, 2007, which was granted. AR 75.

[2]  The Appeals Council found that the new information did not provide a basis for changing the ALJ's decision.  AR 2.

**II.**

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court reviews the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards.  *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion."  *Moncada*, 60 F.3d at 523.  In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence.  *Drouin*, 966 F.2d at 1257.  When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision.  *Moncada*, 60 F.3d at 523.

**III.**

**DISCUSSION**

**A.    Disability**

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy."  *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003).

**B.    The ALJ's Findings**

The ALJ found Ceballos has the severe impairments of history of bilateral carpal tunnel syndrome, status post surgeries and degenerative disc disease of the cervical spine.  AR 18.  Her impairments do not meet or equal a listing.  *Id.*

3

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

She has the residual functional capacity ("RFC") to perform a wide range of medium work. AR 19. She can lift and carry up to 50 pounds occasionally and 25 pounds frequently, sit, stand, and/or walk for 6 out of 8 hours, and "frequently (not constantly/repetitively) perform fine and gross manipulation with both hands." *Id.* Her grasping, gripping, pushing, and pulling capabilities "are limited in the same manner as lifting and carrying." *Id.* She is capable of performing her past relevant work as a gluer. AR 24. The ALJ found that the same conclusion would hold even assuming Ceballos is limited to light work with weight limitations of 20 pounds occasionally and 10 pounds frequently. AR 19.

### C.   Treating Physicians

#### 1.   Dr. Knight

Ceballos contends the ALJ did not properly consider the opinion of her treating physician and Qualified Medical Evaluator, Dr. Knight.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a treating physician, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When, as here, a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and quotation marks omitted). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

Ceballos began treatment with Dr. Knight on September 5, 2006. AR 460. In the Primary Treating Physician's Initial Evaluation and Report, dated

4

September 5, 2006, Dr. Knight noted Ceballos' chief complaints of pain in the bilateral hands, mainly in the right where pain radiates from the thumb to the upper arm, and numbness and tingling in the index, middle and ring fingers bilaterally, occurring more often in the right hand.  AR 461.  He found mild tenderness at the volar right distal forearm, no crepitus, and normal sensation of both hands.  AR 465.  Her motor examination was 5/5 on the right and left.  AR 466.  Her reflexes were 2/4 on the right and left.  *Id.*  She had negative Tinel's and Phalen's.  AR 467.  The dynamometer readings of her grip measured 40 on the right and 45 on the left.  AR 471.  The remaining upper extremity measurements were normal.  *Id.*  The EMG and nerve conduction reports of both upper limbs were mildly abnormal and consistent with mild right carpal tunnel syndrome.  AR 471-73.  The x-rays of the wrists showed no joint space narrowing, no bone or soft tissue lesions, no fractures, no intercarpal widening or abnormal intercarpal angles.  AR 467.  X-rays of the hands showed a short little finger bilaterally with a congenital shortening of the middle phalanx, no joint space narrowing, no bone or soft tissue lesions, and no fractures.  *Id.*

Dr. Knight diagnosed Ceballos with cumulative trauma injury of bilateral upper extremities and median neuropathy with flexor tenosynovitis, right wrist.  AR 468.  He recommended that Ceballos remain on temporary total disability unless modified work was available with the preclusion from repetitive gripping, grasping, and manipulation of both upper extremities.  *Id.*  He injected the right carpal tunnel with Xylocaine and Celestone, dispensed ranitidine and naproxen, and recommended reevaluation in two weeks.  AR 468-69.

The record contains follow-up reports from Dr. Knight in the nine-month period between his initial evaluation in September 2006 and his Permanent and Stationary Report in June 2007.  AR 419-59.  Dr. Knight performed median neuropathy on Ceballos' right wrist on October 27, 2006.  AR 450.  He performed median neuropathy on her left wrist on January 19, 2007.  AR 435.  After the

1   surgeries, Ceballos reported a marked reduction in symptoms and denied any

2   significant numbness and tingling in her right or left hands.  AR 429-30, 438.  As

3   of March 19, 2007, she had no tenderness of either upper extremity, full range of

4   motion of all digits of both hands, wrists, and elbows, and normal sensation.  AR

5   423.  Her grip measured 45 on the right and 30 on the left.  *Id.*  Dr. Knight

6   recommended continuing occupational therapy three times a week for four

7   weeks.  AR 424.  Dr. Knight found that Ceballos was not ready to return to work

8   "unless modified work is available by the employer with a preclusion from forceful

9   gripping, grasping and lifting greater than 5 pounds with either upper extremity

10  and no repetitive gripping, grasping or manipulation with both upper extremities."

11  AR 423.

12       On June 4, 2007, Dr. Knight provided a Permanent and Stationary Report.

13  AR 409-18.  Ceballos had finished therapy.  AR 409.  She denied any further

14  numbness and tingling in either hand.  AR 410.  He found no tenderness and no

15  crepitus.  *Id.*  Her sensation was normal.  *Id.*  Her motor examination was 5/5 on

16  the right and left.  *Id.*  Her reflexes were 2/4 on the right and left.  AR 411.  She

17  had negative Tinel's and Phalen's.  *Id.*  Her grip measured 15 on the right and

18  left.  AR 415.

19       Dr. Knight diagnosed Ceballos with cumulative trauma injury of bilateral

20  upper extremities, status post median neuropathy of both wrists, and status post

21  right radial tunnel decompression.  AR 412.  Ceballos was permanent and

22  stationary as of June 4, 2007.  *Id.*  He found a 2% whole person impairment

23  rating in regards to cumulative trauma injury of the right upper extremity, and a

24  0% whole person impairment rating in regards to the same injury on the left upper

25  extremity.  *Id.*  He precluded Ceballos "from forceful gripping, grasping and

26  repetitive gripping, grasping and manipulation with both upper extremities."  *Id.*

27  He recommended periodic nonsteroidal anti-inflammatory medication on an as-

28

1  needed basis and follow-up with an orthopedic hand surgeon on an as-needed

2  basis.  AR 413.

3       The ALJ recognized Dr. Knight as a treating physician and considered his

4  reports, but did "not fully accept his work assessment."  AR 20-21.  The ALJ

5  noted that the grip strength test results in Dr. Knight's permanent and stationary

6  report were inexplicably low as compared to both his prior test results and

7  subsequent grip strength test results.  AR 21.  Therefore, the ALJ found the grip

8  strength test results bracketing the permanent and stationary reports to be more

9  reliable.  *Id.*  Moreover, Ceballos denied tingling and numbness in both

10  extremities, and stopped taking medications later that year.  *Id.*  The ALJ noted

11  that other medical opinions in the record assigned lesser restrictions.[3]  *Id.*

12       The ALJ articulated specific and legitimate reasons supported by

13  substantial evidence in the record for discounting Dr. Knight's opinion.  At the

14  permanent and stationary evaluation, Dr. Knight found normal motor strength and

15  sensation in the bilateral upper extremities, no impairment of the nerves, and no

16  impairment in range of motion.  AR 20, 400-01.  He found bilateral grip strength of

17  15 pounds.  AR 20, 405.  The ALJ found that Dr. Knight's grip strength results

18  from January (30/50), March (45/30), and April (45/35), and Dr. Altman's grip

19  strength results from November 2007 (25/40) were consistent and therefore more

20  reliable than Dr. Knight's June 2007 (15/15) result.[4]  AR 20-21, 405, 420, 423,

21  439, 499.  The ALJ also considered that grip strength testing results are

22  dependent on patient effort, and noted factors that undermined Ceballos'

23  credibility.  AR 21.  For the reasons discussed below, the ALJ's credibility finding

24  is supported by substantial evidence.  *See Morgan v. Comm'r of Soc. Sec.*

25

26       [3]  The opinions are addressed below.

27       [4]  The ALJ acknowledged that Dr. Grogan measured a grip strength of 5,7
28  on the right and 5,5 on the left in February 2010, but found the result was due to
   the absence of full effort by Ceballos.  AR 22, 526.

1   *Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (ALJ may properly reject treating

2   physician's opinion based on subjective complaints when ALJ properly discounts

3   claimant's credibility).

4       Ceballos contends that Dr. Knight's preclusion from forceful gripping and

5   grasping constitutes a limitation to light work.  Ceballos' reliance on *Cooper v.*

6   *Sullivan*, 880 F.2d 1152 (9th Cir. 1989), for the proposition that "a preclusion from

7   'forceful' gripping constitutes a limitation to light work," is misplaced.  In *Cooper*,

8   the treating physician stated that the plaintiff suffered from exertional and

9   nonexertional impairments.  *Cooper*, 880 F.2d at 1156.  The treating physician

10  specified that the plaintiff could not perform heavy lifting activities requiring

11  forceful gripping.  *Id.*  The VE in *Cooper* testified that the plaintiff's impairments

12  limited her to at most light work.  *Id.* at 1157.  In contrast, as Ceballos

13  acknowledges, Dr. Knight did not mention any exertional limitations in the

14  Permanent and Stationary Report.  AR 412; JS 21.  Nor did the VE testify that

15  Ceballos was limited to light work.  The ALJ noted that the outcome would not

16  change even assuming Ceballos were limited to light work.

17      The ALJ assessed that Ceballos could "frequently (not constantly/

18  repetitively) perform fine and gross manipulation with both hands."  AR 19.  The

19  term "frequently" in the social security context means 1/3 to 2/3 of the time.

20  Social Security Ruling[5] ("SSR") 83-10.  Ceballos contends that the ALJ used the

21  term "repetitively" as it is defined in the workers compensation context, namely, "a

22  loss of 50% of pre-injury capacity".  *Schedule for Rating Permanent Disabilities* at

23  1-13, 2-14, California Department of Industrial Relations, April 1997.  Ceballos

24

25

26      [5]  "Social Security Rulings do not have the force of law.  Nevertheless, they
    constitute Social Security Administration interpretations of the statute it
27  administers and of its own regulations," and are given deference "unless they are
    plainly erroneous or inconsistent with the Act or regulations."  *Han v. Bowen*, 882
28  F.2d 1453, 1457 (9th Cir. 1989).

1  further argues that a loss of 50% of pre-injury capacity means that she would be

2  able to perform fine and gross manipulation only 50% of the time.

3  Ceballos' argument confuses a "repetitive" activity restriction with a

4  limitation that Ceballos cannot "frequently" perform a certain activity.  A job may

5  require frequent fine or gross manipulation without requiring repetitive activity.

6  *See Gardner v. Astrue*, 257 Fed. Appx. 28, 30 & n.5 (9th Cir. 2007) (discussing

7  differences between frequent and repetitive activity).  The ALJ articulated specific

8  and legitimate reasons, based on substantial evidence, for discounting Dr.

9  Knight's opinion.

10  The problem, however, is that the ALJ's hypothetical to the VE did not

11  contain the limitation on repetitive fine and gross manipulation with both hands.

12  AR 19, 72-73.  Therefore, it is unknown whether Ceballos can perform her past

13  relevant work with that limitation.  Accordingly, this matter must be remanded for

14  further inquiry at step four of the sequential analysis.

15  **2.  Dr. Grogan**[6]

16  Dr. Grogan examined Ceballos on February 17, 2010 and April 5, 2011.

17  AR 22, 526, 538.  In February 2010, he found a well-healed right hand area, 5/5

18  motor, intact sensation, positive Tinel's and Phalen's, and grip strength 5,7 on the

19  right and 5,5 on the left.  AR 22, 526.  He stated that x-rays of the cervical spine

20  indicate multilevel degenerative disc disease with osteopenia.  AR 22, 527.  He

21  opined that Ceballos "is physically incapable of returning to work as an assembler

22  of parts and should be precluded from that type of employment."  AR 22, 527.  In

23  a February 2010 physical capacities evaluation form, he opined that Ceballos

24  could sit for 4 hours, stand for 3 hours, and walk for 2 hours out of an 8 hour day.

25

26  [6]  The ALJ considered Dr. Grogan a treating physician, as did Ceballos in her brief.  (JS at 7.)  In her reply, Ceballos "concedes that the ALJ erroneously

27  deemed Dr. Grogan a treating physician."  (JS at 21.)  Nevertheless, because the ALJ addressed Dr. Grogan as a treating physician, this court addresses Ceballos'

28  arguments under the treating physician category.  The characterization makes no difference to the outcome.

1    AR 22, 517.  She could occasionally lift or carry up to 5 pounds.  AR 22, 517.

2    She could use her hands for repetitive action such as simple grasping, but not for

3    pushing and pulling or fine manipulation.  AR 22, 517.  She could frequently

4    bend, and occasionally squat, crawl, climb or reach.  AR 22, 517.  She was

5    moderately restricted from unprotected heights, moving machinery, and driving.

6    AR 22, 517.  She was mildly restricted from exposure to marked changes in

7    temperature and humidity, and to dust, fumes and gases.  AR 22, 517.

8         Dr. Grogan's April 2011 physical capacities evaluation was the same as his

9    February 2010 evaluation, except that Ceballos' ability to bend got worse.  AR

10   517, 534.  In a one-page letter to Ceballos' employer, dated April 5, 2011, Dr.

11   Grogan diagnosed Ceballos with bilateral carpal tunnel syndrome and

12   degenerative disc disease.  AR 22, 536.  He stated that Ceballos "is presently

13   partially totally disabled," and the disability was expected to last at least through

14   October 1, 2011.  *Id.*  In a one-page physical reevaluation, Dr. Grogan opined

15   that Ceballos was "physically incapable of returning back to work as an

16   assembler of auto parts due to persistent hand pain, and should be precluded

17   from that type of employment."  AR 538.

18        The ALJ found that Dr. Grogan's opinions were "not well supported by

19   reliable objective data."  AR 22; *see Thomas*, 278 F.3d at 957 (ALJ need not

20   accept medical opinion that is inadequately supported by clinical findings).  The

21   ALJ accurately summarized the data provided by Dr. Grogan.  AR 20, 22.  In

22   February 2010, Dr. Grogan found normal motor strength, sensation and reflexes,

23   which appeared to counter his abnormal findings of positive Tinel's and Phalen's

24   and grip strength of 5,7 in the right and 5,5 in the left.  AR 22, 526.  Dr. Grogan's

25   grip strength test results were 50% less than Dr. Knight's lowest results, and far

26   less than Dr. Altman's results, all of which led the ALJ to conclude an "absence of

27   full effort" by Ceballos.  AR 22.  The ALJ found that Dr. Grogan's positive Tinel's

28   and Phalen's findings were "suspect" given that they were not previously found in

1   any post-surgical period and there was no evidence of an intervening trauma.  AR

2   22.  Although Dr. Grogan referred to x-rays of the cervical spine as indicating

3   multilevel degenerative disc disease with osteopenia, he did not provide the

4   underlying x-rays or any other objective data.  AR 22, 527.  Contrary to Dr.

5   Grogan, neither Dr. Knight nor Dr. Altman restricted Ceballos in terms of sitting,

6   standing or walking, or lifting more than 5 pounds.  AR 22, 402, 501.

7        The ALJ found that Dr. Grogan's April 2011 report was not supported by

8   objective data other than that in the February 2010 report.  AR 22.  Although Dr.

9   Grogan diagnosed bilateral carpal tunnel syndrome and degenerative disc

10  disease, there was no discussion of aggressive treatment such as additional

11  surgical intervention.  AR 20, 22.  The ALJ correctly noted that Ceballos took mild

12  or no medications.  AR 20, 522, 524, 526.

13       The ALJ observed that Dr. Grogan's opinion that Ceballos could not work

14  as an assembler of auto parts concerned vocational matters, which is not his area

15  of expertise.  AR 22, 527, 538.  The ultimate disability determination is reserved

16  to the Commissioner.   20 C.F.R. § 416.903; SSR 96-5p; *see also* 20 C.F.R. §

17  416.927(d)(1) (2010) ("A statement by a medical source that you are 'disabled' or

18  'unable to work' does not mean that we will determine that you are disabled.").

19       The ALJ further noted Ceballos was referred to Dr. Grogan "to qualify [her]

20  for disability."  AR 22.  The ALJ may consider the referral along with other

21  evidence.  *See Saelee v. Chater,* 94 F.3d 520, 523 (9th Cir. 1996) (per curiam)

22  (fact that doctor's opinion was solicited by plaintiff's counsel may be considered in

23  conjunction with other evidence in the record, such as lack of sufficient objective

24  medical basis for the opinion).

25       The ALJ set forth specific and legitimate reasons, supported by substantial

26  evidence in the record, for discounting Dr. Grogan's opinion.  The ALJ did not err.

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

### D.    <u>Examining Physician</u>

An examining physician's opinion constitutes substantial evidence when it is based on independent clinical findings.  *Orn*, 495 F.3d at 631.  When an examining physician's opinion is contradicted, "it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Carmickle v. Comm'r of Soc. Sec. Admin.,* 533 F.3d 1155, 1164 (9th Cir. 2008) (citation omitted).

Ceballos contends the ALJ failed to provide a legitimate basis for rejecting the portion of the opinion of Dr. Altman, a consultative orthopedic examiner, limiting Ceballos to light work.  Ceballos also contends that Dr. Altman's conclusion that she could perform gross and fine manipulative activities up to frequently was not substantial evidence on which the ALJ could rely.

The ALJ considered and discussed Dr. Altman's opinion.  AR 18, 21-23.  The ALJ rejected Dr. Altman's opinion that Ceballos was limited to light work, and adopted the opinion that Ceballos could frequently perform fine and gross manipulation.  JS 9-10; AR 21.  The ALJ stated that even if he accepted Dr. Altman's assessment limiting Ceballos to light work, Ceballos would be able to perform her past relevant work.  AR 19, 21, 23.  The VE testified that Ceballos' past relevant work would be described as gluer, DOT 795.687-014, a job which the DOT describes as light work.[7]  AR 71.

With respect to frequent fine and gross manipulation, Ceballos argues that Dr. Altman's examination "demonstrated the same clinical findings as Dr. Grogan and Dr. Knight."  JS 10.  She reasons that because Dr. Altman concluded she could perform gross and fine manipulative activities up to frequently, and Dr. Grogan and Dr. Knight opined that she could perform the activities up to 50% of

---

[7]  The ALJ mistakenly described the DOT classification as medium work. AR 23.  However, the VE's testimony was clear that the gluer job required light work under the DOT, although it appeared Ceballos may have actually performed it at the medium level.  AR 71.

1    the day, Dr. Altman's conclusion is not substantial evidence. *Id.* (citing *Orn*, 495

2    F.3d at 632). However, Dr. Altman provided independent clinical findings that

3    differed from the findings of Dr. Knight, and performed tests that Dr. Knight did

4    not perform. AR 400-01, 498-99. Therefore, the conclusions of Dr. Altman

5    constitute substantial evidence. *See Orn*, 495 F.3d at 632 (Substantial evidence

6    exists where the "examining physician provides 'independent clinical findings that

7    differ from the findings of the treating physician.'") (citations omitted). The ALJ

8    did not err.

9        **E. Credibility**

10       Ceballos contends the ALJ failed to articulate legally sufficient reasons for

11   rejecting her symptom testimony.

12       "To determine whether a claimant's testimony regarding subjective pain or

13   symptoms is credible, an ALJ must engage in a two-step analysis." *Lingenfelter*

14   *v. Astrue*, 504 F.3d 1028, 1035-36 (9th Cir. 2007). First, "the ALJ must determine

15   whether the claimant has presented objective medical evidence of an underlying

16   impairment 'which could reasonably be expected to produce the pain or other

17   symptoms alleged.'" *Id.* (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir.

18   1991) (en banc)). The ALJ found that Ceballos "has conditions that can

19   reasonably cause her basic symptoms." AR 19.

20       "Second, if the claimant meets this first test, and there is no evidence of

21   malingering, 'the ALJ can reject the claimant's testimony about the severity of her

22   symptoms only by offering specific, clear and convincing reasons for doing so.'"

23   *Lingenfelter*, 504 F.3d at 1036 (citations omitted). "In making a credibility

24   determination, the ALJ 'must specifically identify what testimony is credible and

25   what testimony undermines the claimant's complaints.'" *Greger v. Barnhart*, 464

26   F.3d 968, 972 (9th Cir. 2006) (citation omitted). "[T]o discredit a claimant's

27   testimony when a medical impairment has been established, the ALJ must

28   provide specific, cogent reasons for the disbelief." *Orn*, 495 F.3d at 635 (citations

and quotation marks omitted).  "The ALJ must cite the reasons why the claimant's testimony is unpersuasive."  *Id.* (citation and quotation marks omitted).  Here, the ALJ found no evidence of malingering.  He found that "the persistence, intensity and effects of [Ceballos'] symptoms allowed her to work at the level assessed . . . within 12 months after her alleged onset date and that she remains capable of doing so."  AR 19.

In weighing credibility, the ALJ may consider factors including:  the nature, location, onset, duration, frequency, radiation, and intensity of any pain; precipitating and aggravating factors (*e.g.*, movement, activity, environmental conditions); type, dosage, effectiveness, and adverse side effects of any pain medication; treatment, other than medication, for relief of pain; functional restrictions; the claimant's daily activities; and "ordinary techniques of credibility evaluation."  *Bunnell*, 947 F.2d at 346 (citing SSR 88-13)  (quotation marks omitted).  The ALJ may consider (a) inconsistencies or discrepancies in a claimant's statements; (b) inconsistencies between a claimant's statements and activities; (c) exaggerated complaints; and (d) an unexplained failure to seek treatment.  *Thomas*, 278 F.3d at 958-59.

As the ALJ noted, Ceballos testified at the remand hearing in April 2011 that her condition is "getting worse and worse."  AR 20, 37.  The pain in her hands is worse and "now it's my legs, too."  AR 20, 37.  She has problems sitting and getting up and walking.  AR 45.  Her neck hurts, she has high blood pressure, and she has gained weight.  AR 20, 35, 37.

The ALJ found "some problems with [Ceballos'] credibility and reliability."  AR 19.  He considered inconsistencies in Ceballos' testimony and conduct regarding her job demands as a gluer, her ability to speak and understand English, and her need for a cane.  AR 19.  An ALJ may properly consider inconsistencies in testimony or between testimony and conduct when weighing a claimant's credibility.  *Orn,* 495 F.3d at 636; *Thomas*, 278 F.3d at 958-59.  An

1  ALJ may engage in ordinary techniques of credibility evaluation, such as

2  considering inconsistencies in a claimant's testimony.   *Tonapetyan v. Halter*, 242

3  F.3d 1144, 1148 (9th Cir. 2001).

4        Regarding Ceballos' descriptions of her job demands as a gluer, the ALJ

5  noted that Ceballos indicated in her Disability Report – Adult that she lifted up to

6  40 pounds and spent one hour handling, grabbing or grasping big objects and

7  one hour handling small objects.  AR 19, 240.  In her Work History Report, she

8  indicated that she lifted less than 10 pounds and she did fine and gross

9  manipulation for 7 hours.  AR 19, 258.  In her testimony, she indicated that she

10  lifted 7 pounds and up to 30 pounds.  AR 19, 39, 57, 62.  Ceballos contends she

11  did not fill out the Disability Report – Adult and argues the report lacks sufficient

12  foundation to support a reasonable finding of genuineness.  JS 25.

13        The ALJ noted Ceballos' contrasting representations regarding her English

14  language abilities.  AR 19.  In her Disability Report – Adult, Ceballos indicated

15  that she cannot speak or understand English.  AR 19, 238.  In the first hearing,

16  she used an interpreter for part of the hearing.  AR 56-71.  In the hearing on

17  remand, an interpreter was present at the hearing, but Ceballos declined to use

18  the interpreter.  AR 19, 32.  As the ALJ noted, Ceballos understood the questions

19  in English and responded in English, with no apparent difficulty.  AR 19, 32-47.

20  Ceballos testified that she took three semesters of ESL classes, but did not

21  specify the dates.  AR 72.

22        The ALJ noted Ceballos testified that she uses a cane; yet she did not

23  bring a cane to the hearing and there was no showing that it was prescribed or

24  necessary.  AR 19, 46-47.  Ceballos argues that although she testified she uses a

25  cane, she never testified that she requires a cane.  JS 25.  An ALJ may draw

26  inferences logically flowing from the evidence.  *Macri v. Chater*, 93 F.3d 540, 544

27  (9th Cir. 1996).

28

1    The ALJ also considered the lack of medical evidence to support Ceballos'

2  claims of disability.  AR 19-20.  Although lack of medical evidence cannot form

3  the sole basis for discounting pain testimony, it is a factor that the ALJ can

4  consider in his credibility analysis.  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir.

5  2005).  The ALJ noted that Ceballos' statements to her physician and her post-

6  surgical treatment history "are not supportive of 'disability.'" AR 19.  In January

7  2007, Ceballos reported good results from her right median nerve decompression

8  and requested the same surgery on her left side.  AR 325.  In June 2007, after

9  bilateral median nerve decompression surgeries, she reported no further

10  complaints and denied any further numbness and tingling in either hand.[8]  AR

11  400.  The ALJ acknowledged Ceballos' residual or renewed problems, but noted

12  that Dr. Grogan did not recommend any treatment or any further surgical

13  intervention when he examined Ceballos in February 2010 and April 2011.  AR

14  19-20, 526-27, 538.  The ALJ also noted that Ceballos generally treated with mild

15  pain medication or none at all.  AR 20.  "Evidence of 'conservative treatment' is

16  sufficient to discount a claimant's testimony."  *Parra v. Astrue*, 481 F.3d 742, 751

17  (9th Cir. 2007).

18    The ALJ's reasons for discounting Ceballos' credibility are supported by

19  substantial evidence.  "If the ALJ's credibility finding is supported by substantial

20  evidence in the record, we may not engage in second-guessing."  *Thomas*, 278

21  F.3d at 959 (citing *Morgan*, 169 F.3d at 600).

---

26    [8]  The ALJ noted inconsistencies in Ceballos' statements to physicians.  In
November 2007, Ceballos reported to Dr. Altman that her right elbow and wrist
27  pain only "slightly improved" post-surgery, whereas she reported to Dr. Knight in
June 2007 that she had no current complaints and no further numbness or
28  tingling in either hand.  AR 21, 410, 497.

**IV.**

**ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and remanded at step four of the sequential analysis to determine whether Ceballos can perform her past relevant work if precluded from repetitive fine and gross manipulation with both hands as found by the ALJ.  If appropriate, the ALJ may continue to step five of the sequential analysis.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: October 17, 2012

ALICIA G. ROSENBERG
United States Magistrate Judge